# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| LOUIS ENENSTEIN, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 06 C 627 |
| | ) |
| EAGLE INSURANCE AGENCY, INC., et al., | ) |
| | ) |
| Defendants. | ) |

## MEMORANDUM OPINION

SAMUEL DER-YEGHIAYAN, District Judge

This matter is before the court on Defendant/Third-Party Plaintiff Eagle Insurance Agency, Inc.'s ("Eagle") and Defendant/Third-Party Plaintiff Robert Gainsberg's ("Gainsberg") (collectively referred to as "Defendants") motion for summary judgment and on Third-Party Defendant Humana Insurance Company's ("Humana") motion for summary judgment. For the reasons stated below, we deny the motions for summary judgment in their entirety.

## BACKGROUND

Plaintiff Louis Enenstein ("Enenstein") alleges that from September 2003 to January 2004, he was employed as an accountant for Eagle. Eagle allegedly

1

provides its employees with the Eagle Insurance Agency Group Health Plan ("Plan"), which is provided through Humana and, according to Enenstein, was administered by Gainsberg. Enenstein asserts that after his employment with Eagle ended, Eagle and Gainsberg failed to notify Enenstein that he was qualified for continued insurance coverage under the Consolidated Omnibus Budget Reconciliation Act ("COBRA"), 29 U.S.C. § 1161 *et seq.* Enenstein also alleges that Eagle and Gainsberg falsely notified Third-Party Defendant Humana, Inc. and Humana that Enenstein was not eligible for COBRA benefits.

According to Enenstein, after his termination he complained to the "Illinois Division of Insurance" ("Division"), which investigated his complaint and documented the alleged false statements that Eagle and Gainsberg made to Humana concerning Enenstein's right to continued insurance coverage. (Compl. Par. 9). Enenstein states that after the Division's investigation, Eagle and Gainsberg agreed to represent to Humana that Enenstein was entitled to continued insurance coverage. Enenstein contends that Eagle and Gainsberg were required to have informed Humana of Enenstein's correct insurance status a year earlier than when they chose to do so. Enenstein brought the instant action and included in his complaint claims alleging that Eagle and Gainsberg violated the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1132 *et seq.*, and COBRA.

On June 7, 2006, we denied Defendants' motion to dismiss and on June 27, 2006, Defendants and the Plan filed a third-party complaint against Humana and Humana, Inc. Defendants contend that errors made by Humana employees were

responsible for the alleged violations of ERISA and COBRA that are the basis of the instant action. Third-Party Plaintiffs allege that, pursuant to an agreement between Eagle and Humana, Humana acted as the fiduciary for ERISA claims review purposes and had the exclusive discretionary authority to make interpretations concerning the provisions of the Plan and resolve eligibility and coverage issues. Third-Party Plaintiffs claim that Enenstein completed an application for health benefits on December 30, 2003, and Eagle sent the application to Humana. According to Third-Party Plaintiffs, Eagle terminated Enenstein's employment before receiving a response from Humana concerning Enenstein's Plan coverage. Gainsberg contends that he then spoke with Tom McNeely ("McNeely"), an employee of Humana, who informed him that Enenstein was not entitled to coverage under the Plan or under COBRA. Third-Party Plaintiffs claim that Eagle refrained from sending a COBRA notification to Enenstein in January or February of 2004 because of McNeely's representations. According to Third-Party Plaintiffs, in January 2005, Humana changed its position and informed Eagle that Enenstein was actually eligible for Plan coverage and instructed Eagle to provide COBRA notifications and Plan coverage to Enenstein. Eagle allegedly then provided Enenstein with notification and benefits. The third-party complaint includes an ERISA breach of fiduciary duty claim (Count I), and an indemnification claim (Count II). On November 8, 2005, we granted Humana, Inc.'s motion to dismiss the breach of fiduciary duty claim brought against it.

       Defendants moves for summary judgment on the claims brought against them

by Enenstein and on the claims they have brought against Humana. Humana moves for summary judgment on the claims brought against it by Defendants and the Plan.

## LEGAL STANDARD

Summary judgment is appropriate when the record, viewed in the light most favorable to the non-moving party, reveals that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). In seeking a grant of summary judgment the moving party must identify "those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56(c)). This initial burden may be satisfied by presenting specific evidence on a particular issue or by pointing out "an absence of evidence to support the non-moving party's case." *Id.* at 325. Once the movant has met this burden, the non-moving party cannot simply rest on the allegations in the pleadings, but, "by affidavits or as otherwise provided for in [Rule 56], must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). A "genuine issue" in the context of a motion for summary judgment is not simply a "metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Rather, a genuine issue of material fact exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby,*

4

*Inc.*, 477 U.S. 242, 248 (1986); *Insolia v. Philip Morris, Inc.*, 216 F.3d 596, 599 (7th Cir. 2000). The court must consider the record as a whole, in a light most favorable to the non-moving party, and draw all reasonable inferences that favor the non-moving party. *Anderson*, 477 U.S. at 255; *Bay v. Cassens Transport Co.*, 212 F.3d 969, 972 (7th Cir. 2000). When there are cross motions for summary judgment, the court should "construe the evidence and all reasonable inferences in favor of the party against whom the motion under consideration is made." *Premcor USA, Inc. v. Am. Home Assur. Co.*, 400 F.3d 523, 526-27 (7th Cir. 2005).

**DISCUSSION**

I. Claims Brought By Enenstein Against Defendants

Defendants argue that Gainsberg cannot be sued since he is not the administrator of the Plan ("Administrator"). Defendants also argue that Enenstein lacks standing to bring the instant action against Defendants.

A. Claims Brought Against Gainsberg

Defendants argue that Gainsberg is not a proper defendant since he was not the Administrator. An ERISA plan administrator is required to provide plan beneficiaries and participants with certain documents upon request within a certain time frame. 29 U.S.C. § 1024(b)(4). Under ERISA, an administrator is deemed to be: "(i) the person specifically so designated by the terms of the instrument under which the plan is operated; (ii) if an administrator is not so designated, the plan

5

sponsor; or (iii) in the case of a plan for which an administrator is not designated and a plan sponsor cannot be identified, such other person as the Secretary may by regulation prescribe." 29 U.S.C. § 1002(16). Defendants contend that Gainsberg was not the Administrator, but Eagle was the Administrator. (DSF Par 3, 5).

Defendants, as movants, bear the burden of pointing to sufficient evidence to show that a finding can be made in Defendants' favor as a matter of law. *Celotex Corp.*, 477 U.S. at 323. The only evidence pointed to by Defendants to support the conclusion that Gainsberg was not the Administrator is Gainsberg's own deposition testimony, the deposition of Renee Zich ("Zich"), a Humana representative, and the Illinois Employer Group Application ("Application") completed by Eagle for the Plan. (DSF Par. 3, 5). However, the fact that Gainsberg himself denies being the Administrator does not establish the truth of his contention. The credibility of Gainsberg's self-serving denial that exempts him from liability is an issue for the trier of fact to consider. The testimony of Zich pointed to by Defendants does not show that Gainsberg was not the Administrator. In fact, the issue was not even discussed during the portion of Zich's deposition that is cited by Defendants. (Zich Dep. 29). Rather, Zich indicated that Gainsberg was a person that could be contacted for information concerning the Plan. (Zich Dep. 29). If Gainsberg was the Administrator, there is no reason why he could not also be a contact person for information concerning the plan.

Defendants also point to the Application completed by Eagle for the Plan, and that the terms of the Application included a statement that provided that Eagle was

the Administrator. (DSF Ex. A). Defendants also failed in their statement of material facts to cite any other documents that would conclusively establish that Eagle was the Administrator. (DSF Par. 3). Defendants fail to account for the Benefit Summary Plan Description ("Summary") for Eagle, which lists Gainsberg as the "Plan Administrator." (E Ans. Ex. A). The Summary, which details the terms under which the Plan operates, appears, based upon the record before us, to be a Plan document created by Humana. We also note that Defendants improperly dispute this fact in their response to Enenstein's statement of additional facts, stating that the fact is "disputed." (R ESAF Par. 11). Although Defendants point to the Application to support their position, they have not cited to any evidence that would draw into question the accuracy of the Summary provided as an exhibit by Enenstein, or pointed to evidence that shows that Gainsberg was not listed in the Summary as the "Plan Administrator."

Enenstein also points to a letter ("Letter") from Gainsberg in which Gainsberg lists his title as "Plan Administrator." (E Ans. Ex. B). Defendants fail to explain why Gainsberg held himself out as the Administrator if he was not in fact the Administrator. Defendants argue that Gainsberg's name was only placed on the Letter and Summary "to reflect a specific employee contact for Eagle." (D SJ Reply 2). However, if Gainsberg was only intended to be listed as a contact, Defendants fail to explain why Gainsberg was not simply identified as a contact rather than as the "Plan Administrator." Gainsberg's deposition testimony sheds little light on this topic. Gainsberg explained in regard to the Letter that he "was under the impression

7

that the Department of Labor wanted the name of a person who - - an employee or a name of a human being to be listed as the persons responding to this letter." (Gains. Dep. 19). Gainsberg further stated: "That is the only reason why I'm listed there as plan administrator. I am not the plan administrator." (Gains. Dep. 19). Gainsberg thus neglected to explain why he gave himself the title of "Plan Administrator," if he was simply listing himself as a contact person. Defendants have thus failed to point to sufficient evidence to find as a matter of law that Gainsberg was not the Administrator. (DSF Par. 3, 5); *see also Rud v. Liberty Life Assur. Co. of Boston*, 438 F.3d 772, 774 -75 (7th Cir. 2006)(indicating that the Seventh Circuit has yet to decide whether it will recognize under the law a de facto administrator). Instead, we are presented with a variety of conflicting evidence that must be considered and weighed by the trier of fact. Defendants, as the movants, bore the burden to point to sufficient evidence to support a finding as a matter of law on this issue, and Defendants failed to meet that burden. Therefore, we deny Defendants' motion to dismiss the claims brought against Gainsberg.

B. Standing

Defendants argue that Enenstein lacks standing to bring the instant action because he is not a participant or beneficiary of the Plan. Under 29 U.S.C. § 1132(a), a "participant" or a "beneficiary" in a benefits plan may bring an action to recover benefits. 29 U.S.C. § 1132(a). Enenstein concedes that he is not a beneficiary, but argues that he is a participant.

The term participant has been interpreted to include "someone who claims to be a participant. . . ." *Firestone Tire and Rubber Co. v. Bruch*, 489 U.S. 101, 116-17 (1989)(quoting *Bruch v. Firestone Tire and Rubber Co.*, 828 F.2d 134, 143 (3d Cir. 1987)). More specifically, a participant includes "either 'employees in, or reasonably expected to be in, currently covered employment,' . . . or former employees who 'have . . . a reasonable expectation of returning to covered employment' or who have 'a colorable claim' to vested benefits. . . ." *Id.* (quoting in part *Saladino v. I.L.G.W.U. Nat. Retirement Fund,* 754 F.2d 473, 476 (2d Cir. 1985), and *Kuntz v. Reese,* 785 F.2d 1410, 1411 (9th Cir. 1986)).

Defendants argue that Enenstein did not have a colorable claim to benefits when this action was filed. In *Winchester v. Pension Committee of Michael Reese Health Plan, Inc. Pension Plan*, 942 F.2d 1190 (7th Cir. 1991), the Court held that a plaintiff bringing a Section 1132(c) claim that "accepted her benefits before filing [her] civil action" lacked standing since "[s]he was not a plan participant at the time the action was filed" and thus did not have a colorable claim at the time the action was filed. *Id.* at 1193-94; *see also Neuma, Inc. v. AMP, Inc.*, 259 F.3d 864, 878 n.10 (7th Cir. 2001)(indicating that "a plaintiff must have a colorable claim for benefits not only when he requests plan information but also on the date when the party files suit").

Defendants argue that Enenstein did not have a colorable claim to benefits when Enenstein filed the instant action. Defendants point to the evidence, such as that after Enenstein's employment was terminated, that Enenstein did not

9

immediately contact Gainsberg or other representatives at Eagle to discuss whether Enenstein was covered by health insurance. (DSF Par. 56). Defendants also contend that Enenstein knew that he was not covered by health insurance in February 2004, but did not request information concerning COBRA coverage. (DSF Par. 61). Defendants also point out that Enenstein was ultimately provided with notification concerning COBRA coverage and that in February 2004 Enenstein declined to elect for COBRA coverage. Defendants further argue that since Enenstein failed to file the instant action until a year after the alleged notice violations, Enenstein was aware that he lacked any vested right to benefits and that he did not have a colorable claim to such benefits when he filed the instant action.

  We disagree that the evidence is such that the court can find in favor of Defendants as a matter of law on this issue. Although Defendants criticize Enenstein for not taking the initiative himself to contact Eagle and discuss issues such as COBRA coverage, (DSF Par. 56, 60), the very basis of the instant action is Defendants' admitted failure to provide the statutory required notifications such as the right to COBRA coverage and incorrect information disseminated by Defendants. It is not clear what role the alleged lack of proper notifications and errors by Defendants played on the steps taken by Enenstein to resolve his health insurance issues. The evidence presented to the Court does not conclusively show why Enenstein did not contact Eagle. There are also underlying circumstances presented in certain evidence, which could account for the timing of Enenstein's action or inaction in regard to Eagle that are glossed over by Defendants. For example,

Enenstein states that after his termination he hired an attorney who investigated his situation and his attorney engaged in negotiations with Eagle in regard to the claims in the instant action and other claims.

Enenstein also contends that he made several phone calls to Humana regarding his health insurance coverage. Defendants contend that Humana has no records of such conversations, (DSF Par. 59), but whether Enenstein made such phone calls is a materially disputed fact that can only be resolved by the trier of fact. Defendants also contend that Enenstein failed to take action to investigate his coverage in a timely fashion and that Enenstein "contributed to the delay in receiving notice. . . ." (D SJ Reply 2). However, the extent that the blame for any delays can be attributed to Enenstein can only be assessed by the trier of fact. We cannot speculate, based upon the limited record before us, that Enenstein did not contact Eagle promptly because Enenstein knew all along that he had no right to coverage. Such a determination can only be made by the trier of fact after viewing all the evidence presented and resolving any factual conflicts.

In addition, absent from Defendants' statement of material facts are pertinent facts such as Enenstein's version of the offer of COBRA coverage that was extended to him in February 2004. Defendants portray Enenstein's decision to decline COBRA coverage in February 2004 as a decision on Enenstein's part to relinquish any right to health insurance coverage he might have had. However, Enenstein contends that by the time that Defendants finally got around to offering COBRA coverage, as Defendants should have done to begin with, the offer included a demand

for a lump sum payment for back premiums totaling more than $10,000, which was beyond the financial means of Enenstein at that time. (E Dep. 74-76). Defendants criticize Enenstein for not proposing a payment plan for the COBRA coverage, but such an assertion merely raises another issue that cannot be resolved on the record before us. (D SJ Reply 5). We have no information concerning the circumstances surrounding the negotiations between Enenstein's counsel and Eagle and the court cannot determine whether Enenstein's counsel could or should have made a counteroffer of a payment plan or whether Eagle would have even entertained such an offer. Eagle's contention that Enenstein's counsel should have asked for a payment plan without the pertinent background facts is improper. Thus, whether Enenstein had a colorable claim to benefits can only be determined by the trier of fact after weighing the totality of the evidence. Therefore, based on the above, we deny Defendants' motion for summary judgment on the claims brought against them by Enenstein. We also note that Defendants request that the court, in its discretion, decline to impose a statutory fine on Eagle. However, such a determination is premature at this juncture since Defendants' liability to Enenstein has not been determined at this stage of the proceedings.

II. Claims Brought Against Humana

Humana moves for summary judgment on the claims brought against it in the third-party complaint and Defendants move for summary judgment on the claims that they have brought against Humana.

A. Humana's Motion for Summary Judgment

Humana argues that the law does not recognize an indemnification claim under ERISA between co-fiduciaries. The Seventh Circuit has indicated that "where an ERISA plan suffers losses and where the plan participants and beneficiaries have established a cause of action on their own behalf or on behalf of the plan assets against one fiduciary, that fiduciary may seek indemnification or contribution from co-fiduciaries in accordance with 29 U.S.C. § 1105(a)." *Alton Mem. Hosp. v. Metro. Life Ins. Co.,* 656 F.2d 245, 250 (7th Cir. 1981). Humana points to *Summers v. State Street Bank & Trust Co.*, 453 F.3d 404 (7th Cir. 2006), in which the Court indicated that "it is unsettled whether" co-fiduciary defendants have a right to contribution in an ERISA case. *Id.* at 413. Humana argues that "[a]lthough the Eagle Defendants have brought an indemnification claim here, and not a contribution claim, courts in this Circuit have treated these claims as related and decisions construing contribution claims provide guidance for addressing indemnification claims." (H SJ Mem. 6).

The controlling precedent in the Seventh Circuit supports the recognition of an indemnification claim in the ERISA context. Defendants argue that "[i]t is clear from the Seventh Circuit's holding in *Summers* that it applies to the closely related theory of indemnification as well." (H SJ Reply 4). We disagree. The Court in *Summers* was presented specifically with a question concerning a contribution claim, *id.*, and did not even in dicta discuss the applicability of the holding to indemnification claims. We will not, as Humana proposes, infer that the Seventh

13

Circuit intended to apply its holding in *Summers* to indemnification claims, when the Court specifically referred to contribution claims. 656 F.2d at 250.

In addition, even in regard to contribution claims, the Court in *Summers* did not support Humana's position and declined to recognize a right to contribution, but rather the Court indicated that the issue is unsettled in this Circuit. *Id.* Thus, even if the Seventh Circuit were to extend the reference in *Summers* to contribution to the indemnity context, the facts presented in the instant action present a situation in which indemnification would be entirely appropriate. Humana, the insurance provider, attempts to sidestep any responsibility for the alleged infractions of ERISA and COBRA by contending that Eagle was the Administrator and, therefore, Eagle should bear all responsibility. Even if Eagle was the Administrator, as Humana and Eagle contend, there are facts in this case that indicate that Humana may have played a central role in the alleged violations of ERISA and COBRA. Eagle contends that when it terminated Enenstein's employment, Eagle took appropriate steps as the Administrator to determine whether Enenstein was covered under the Plan. Eagle contends that the enrollment form submitted for Enenstein provided that the insurance did not become effective until Humana accepted the form. Eagle thus contends that without input from Humana, Eagle had no way of knowing when Enenstein's employment was terminated and whether Enenstein was covered under the Plan. Eagle also contends, and Humana does not dispute, that Humana "encourages employers to call" a call center set up by Humana "to answer all questions about eligibility and enrollment." (Ans. H SJ 5); (HR DSF Par. 13). Eagle

claims that it in fact contacted the Humana call center and was improperly told by a Humana employee that Enenstein was not covered. Thus, according to the facts presented by Eagle, Humana actively interjected itself into the decisions made by Eagle, which Humana contends was the Administrator, and such active involvement by Humana in the duties of the Administrator could feasibly be a valid basis to hold Humana accountable for any liability. Also, in this case, Eagle has presented evidence that shows that it reasonably relied upon representations by Humana employees such as McNeely and Jill Popp and that the alleged errors by those Humana employees caused the chain of events that led to the initiation of the instant action. (DSF Par. 40-41, 53). Thus, in light of the evidence indicating Humana's active involvement in duties of the Administrator, and the alleged errors attributed to Humana employees, the facts in this case present a situation in which indemnification may be appropriate. Humana cannot automatically insulate itself to any liability simply by assigning the title of Administrator to another party.

Humana also argues that there can be no claim for indemnity since Humana cannot be found directly liable to Enenstein. However, Humana fails to cite to controlling precedent to support such a position, relying instead on a case from the United States Court of Appeals for the Second Circuit. (H SJ Mem. 12). Also, Humana's involvement in the duties of the Administrator presents a unique circumstance in this case that tie Humana's actions to the Plan participants, which could feasibly provide a basis for liability for Humana. Humana also contends that it is not a fiduciary as to Enenstein in regard to certain activities, but the extent that

Humana is a fiduciary involves disputed facts and facts beyond the limited record before us that can only be addressed by the trier of fact.

Finally, Humana contends that the court should grant summary judgment in its favor since the underlying claims brought by Enenstein against Defendants lack merit. However, as indicated above, the liability of Defendants is an issue that must be resolved by the trier of fact. Therefore, based on the above, we deny Humana's motion for summary judgment.

### B. Defendants' Motion for Summary Judgment Against Humana

Defendants also move for summary judgment in regard to the claims brought against Humana in the third-party complaint. (D SJ Mem. 15). While we have found above that Defendants are entitled under the law to pursue an indemnification claim against Humana, we have not found that Defendants are entitled as a matter of law to prevail on the indemnification claim. There are a variety of factual disputes in this case, such as whether Humana employees made certain statements, that might impact the merit of the indemnification claim and that can only be resolved by the trier of fact. For instance, Gainsberg testified that he spoke to McNeely on a certain occasion and Humana denies that Gainsberg spoke to McNeely on that occasion. (HR DSF Par. 41). Humana contends that although Gainsberg indicated he spoke to a person named "Tom" at Humana, that person was not McNeely. (HR DSF Par. 41). Humana also disputes that McNeely ever made certain representations to Gainsberg. (HR DSF Par. 41). Another example of a disputed issue is whether a

16

female employee of Humana made certain representations to Gainsberg on January 16, 2004. (HR DSF Par. 51-52). Humana also claims that it was not at fault in regard to the lack of notice provided to Enenstein, arguing that Humana relied "on the information provided by" Eagle and that Eagle is to blame. (H SJ Reply 12). Defendants dispute that point. In addition, as is indicated above, the identity of the Administrator has not been resolved as a matter of law and such a determination will impact the potential liability of Humana. Therefore, we deny Defendants' motion for summary judgment on the claims brought by Defendants in the third-party complaint.

## CONCLUSION

Based on the foregoing analysis, we deny Defendants' motion for summary judgment in its entirety and deny Humana's motion for summary judgment in its entirety.

_____
Samuel Der-Yeghiayan
United States District Court Judge

Dated: August 23, 2007